Loan juror number six was biased but he wasn't biased against the prosecution. He was biased in favor of demanding convincing evidence. That's what he wanted. He wanted very convincing evidence and that's why he got, mainly why he got kicked off the jury. And what the trial judge did was unreasonable. It was an unreasonable application of Supreme Court law. It wasn't juror misconduct and it wasn't a situation where during deliberations. The state courts said it was juror misconduct, right? Correct. The Superior Court judge and then the Court of Appeal both said it was juror misconduct. Right, the trial judge found it was biased and my No, the court, in order to rule in favor of miscellaneous, the court must find that what the trial judge did and the other judge, the other courts, was unreasonable. And it was biased. He said that juror number six was biased for four reasons. The first reason is that's exactly the word that the trial judge used when he was talking to and interrogating the jurors. He asked juror number six, what is your standard? Are you going to apply the laws that I give you? And he said, yes, I am going to apply proof beyond a reasonable doubt. I need to be very convinced. And the judge grabbed on to that and found that he was adding words to the standard. And based on that, he said that there was bias. And then he also said that the juror was biased. And so first the juror is biased because he wants conviction. Is there a difference between bias and misconduct? Isn't bias a species of misconduct? Yes. And I'm just wondering if the state, in its wisdom, chooses to define misconduct in a particular way, which may be different from the way we define misconduct. Maybe it is. Can we second guess that decision? We can't second guess. You, as the Ninth Circuit, cannot second guess the rules that the state court sets up. The only thing that this court can do is say that it's in violation of the Sixth Amendment and the protections that that embodies. And in addition to the two cases that are cited in the Ninth Circuit's Sanders v. Marquez case, I would also say that in Williams v. Florida, we really have the definition of what we're talking about here. And the features. The Supreme Court said in Williams v. Florida that the essential feature is the interposition between the accused and the accuser of a group of lay people. So what we have here is the 12 people who are going to decide whether or not Ms. Williams should be found guilty for felony murder. And juror number six saying, I want to be very convinced, saying that he would follow the beyond reasonable doubt standard. But the trial judge didn't believe him. The state trial judge, I mean, he said that when questioned, but based on evidence presented by what the other juror said, that he had said during the deliberations, the trial judge concluded, or found, rather, that he, in fact, was applying a more onerous standard. He was requiring something more than the unreasonable doubt. And there are two reasons this Court can find the doubt was unreasonable. The first is the process that the Court used. The Court, what the Court should have done instead of. I'm sorry. I do want to hear what you have to say as to that because I think it is important. But let me go back one step and just ask you a prior question. Let's say, in fact, the juror had said, yes, I am, in fact, in my mind, going to apply a more onerous standard. You know, I'm entitled to weigh the facts. And, you know, in my mind, this is a very important case. Somebody is going to be sent, possibly sent off for life. And I, in fact, think it should be something beyond the reasonable doubt, more than beyond the reasonable doubt. And let's say he admits it. Is that misconduct? Is that a basis for striking the juror? Well, there we would have... Would that be? That's an interesting question where law review... I spent all weekend thinking of it. My answer would be no. And there is some wonderful, long opinions written about that and law review articles about whether jury nullification is a right. The holdings are that... Would it be a nullification, but... Refusing to follow the law is what it would be. It would be because the standard of proof is the law. And the... So the juror gets in the jury room, doesn't lie or, you know, doesn't say anything during voir dire or voir dire. That is false, but once he gets in there and says, okay, I think I require something more to convict, you think that is a refusal to follow the law, and that would be misconduct in your view? There is clearly a statute of... Yes, there's a clearly established Supreme Court law that says beyond reasonable doubt is the standard. If he says, I'm not going to apply that standard, I'm going to apply a stricter standard, then we would have objective evidence that he wasn't... Let me tell you why I was asking the question, because this seems to me to be something that's deeply intertwined with what jurors do during the look of the process. They apply the law to the facts, and this is sort of part of the process. This is what the common law was on violence. You couldn't really go look into what a juror's state of mind is. Which is... I'm not suggesting an answer. I'm just telling you why I think it's an interesting question, or maybe a difficult question. If a juror says, in my mind, I would require more proofs than that, isn't that a disclosure of the deliberative thinking process of the jury, and isn't that the kind of thing that has traditionally been excluded from review? Absolutely, and that's why the first reason what the judge did was unreasonable is the process. The judge never should have inquired in these circumstances. The circumstances presented here were a jury note saying that he was considering severity, but it wasn't that he was refusing to deliberate. It wasn't that he was emotionally distraught. He wasn't drunk. He wasn't falling asleep. All the jurors said he was deliberating, that he had an honest disagreement. He didn't say, I know the prosecutor and hate him, or I know one of the witnesses. Correct. I wasn't the scene of the crime. He was the holdout juror who upset the other jurors because he's the holdout juror, and then the judge didn't like that he was talking about nullification. He specifically said he wasn't going to nullify. This was an intelligent, informed juror who knew about nullification and two specific historical examples of it, and just talked about it. But then when asked, all the jurors said he wasn't nullifying. He said he wasn't doing jury nullification. And what the judge should have done, as the D.C. court said in Brown and as this court said in Symington, is he had two choices. One was to send the juror back for further deliberations, and he could have given, as this court has said is okay, given a jury instruction. It used to be Calcrim saying, can't consider penalty, must follow the law, give an instruction, and continue deliberations. That wasn't done. So that's the problem with the process, where we're not protecting juror deliberations, which, Judge Kuczynski, you're getting to. You have to protect those juror deliberations. If this court were deliberating about them. What's your best Supreme Court case for that? The best Supreme Court case is Williams v. Florida. Talks about that. And most of the cases are circuit cases. But there is a Cardozo. I'm sorry. Isn't that a problem? I mean, don't we have to go by Supreme Court precedent? And don't the Supreme Court cases almost always involve a situation where there's been a asking for what the split is or talking about how the jurors are divided? This court in Taylor v. Maddox talked about how general rules can be applied, and the Supreme Court has twice, in Wiggins v. Smith and Panetti v. Quarterman, said that EDPA recognizes that even a general standard may be applied in an unreasonable manner. And so this court can look to this circuit law and other circuit law in interpreting Supreme Court law and deciding whether or not what the state court judge did was unreasonable. And I think it's important in this case to distinguish Perez v. Marshall, which is a case where they talked about giving special deference. And Taylor v. Maddox is really the case that controls here, because the question is reasonableness. Taylor v. Maddox controls everything. Right. And so it is a wonderfully written opinion, Your Honor. One of the best I've ever read. It's not all good for me. Only one of the best? So basically, I have 35 seconds, and I'd like to reserve those. Okay. Actually, you've got minus 30 seconds. Oh, I'm sorry. I apologize. Okay. We'll hear from the warden, I guess. Good morning, Your Honor. Deputy Attorney General Stephen Brennan on behalf of the warden. Good morning, Judges. How does he pronounce his name? I believe it's Jaquez. Jaquez. Now there's a new acting warden, so we now need to go with a new acting warden. What's his name? The acting warden is Javier Cavazos. Well, we have to change the caption. Yeah, we'll change the caption.  Yes, I will. Thank you. Your Honors, basically the reason that there can be no relief granted here is, one, it was a credibility call made by the trial judge, which the U.S. Supreme Court has said is entitled to special deference. And secondly, as Your Honor pointed out, the reason that we cannot grant relief is there is no Supreme Court authority on this point, and we are bound in this case. What about the process? It really troubles me that the judge got into the inquiry in the beginning, and it seemed like that there was he could have just let them further deliberate. There was no pending question before him, was there? Well, if you look at the way that the questioning went on in the first part, the juror foreperson did not specifically answer one of the two questions that they were getting to, which had to do with, I believe it was the severity, the punishment of the crime. And at that point, when he was trying to explain it, was perhaps getting into using words that perhaps were thinking of getting into deliberation. But as the prosecutor correctly pointed out in the motion, he said we did not get to this point, and therefore there was an issue of juror misconduct, which the trial court under California law was required to investigate. And what they were required to investigate is see what actually had happened. To do so carefully, and that comports also with U.S. Supreme Court. What California case says that this was misconduct? That for a juror to say what this juror said, or to express doubts about it, that that somehow is bias. What California case? I believe beyond the California case, it's more that what the judge found. No, no, no, no, no, no. Sure. What California case? If the answer is there isn't any, that's fine. We can go on to whatever else you want to talk about. I'm just wondering, what California case says that what the juror said here, the kind of statement the juror made here, and I'm now assuming that they are, as the trial judge found them to be, that that constitutes misconduct or bias. Sure. Just so you understand, the question is, when I think of bias, I think of the defendant is Hispanic or black or whatever. I don't like blacks. I don't like Hispanics. Or the prosecutor is a woman, and I don't touch women or something. That would be bias, it seems to me. There are many things like that. All the statements that the juror number six made here had to do with his reaction to testimony presented or evidence presented in the trial, the facts of the case, plus the instructions of the judge. What California case says that that kind of evidence, that kind of feeling or view on the part of the juror constitutes bias? Well, I believe we can go back to Cleveland, just looking into. I looked at Cleveland. I didn't see it, but maybe I missed it. Maybe you can tell me where in Cleveland that is. It is the larger point of where, at Cleveland, I think at 484, where they're saying that the trial court must inquire, and up to the point where it says that the juror had issues participating in deliberations and notably has not expressed an intention to disregard the court's instructions or otherwise commit misconduct. And under California law, and here is what it was, is that the trial court made these findings in saying, I believe he's a liar. I think he's being dishonest. I think he's lying in court. So these were what the trial court was saying. He is biased. He is not impartial. He is a partial juror. And under Sixth Amendment law, that's. He's lying in response to the questions that Judge Aston, which gets us back to Judge White's question, is why under California law, federal law, is it proper for the judge to ask questions about what's going on with the mental processes of the juror? I think Your Honor would be correct if he were actually applying what the law was. What the court was trying to inquire here was whether, in fact, he was applying California law. And that's different. That's different because they're not actually getting into, quote, of applying the facts to the law, but rather applying a different and entirely what is not the law. But if you look at the question that was sent out by the foreperson, why wouldn't the response to that be to just give another jury instruction and perhaps say, if there are further problems, let me know? But it really bothers me that there's questioning of the jurors and what they're talking about in deliberations based upon this particular note. I think, again, because of what the note said, that he was not following the law. And what we didn't get to in that first part of the questioning was a full answer to all the questions that were raised. There were some of them that were answered, but some of them not. And, therefore, there still was this question outlying. And the court, therefore, did have a duty to investigate. If, at this point, if the trial judge had felt that he was being, that this person was biased or had that point, I bet we would be here on the issue that there should have been a forward hearing, as opposed to here what the trial court did was trying to do with him correctly. That if he had stopped at a certain point and said, I believe this juror is biased, and bounced him at that point, I believe we'd be here on habeas, on the issue that they should have had a deeper hearing. And as the trial court said, during the course of this hearing between counsel and the court, he says, look, you know, the reason that we're doing this is not so much for us. It's so that the court of appeals can look and see what we were thinking. And I want to be deliberate here, and I want to make the right decision. And that's what he did. And he was following Supreme Court precedent. He said, Andrew Smith v. Phillips, I believe it is, where it says that you do need to have this type of hearing to inquire as to what's going on. So he was following what they're supposed to be doing. What case can you cite, either California or federal law, where this kind of inquiry has been made and approved on appeal of, I mean, other than this case, obviously, about the deliberative process of the jury, about what a juror's thinking in assessing the evidence? I think under sort of the California cases of saying that there is no right to juror nullification. Again, it's that same sort of inquiry of thinking what they were deciding to do or not do. Those cases, I believe, deal with a situation where somebody wants an instruction telling the jury, by the way, you can disregard the law. That's quite different. You may, in fact, not be entitled to that instruction. I think you're not and shouldn't be. I'm a strong believer in that. But that's quite a different question from pulling jurors out of the deliberations and taking them one by one and asking them what did a particular juror, what was said among the jurors. I've never seen anything like this. Well, it's also interesting to see how it came about. Have you? I, offhand, I can't recall. But, again, we must say that we cannot grant relief unless we have a Supreme Court case saying that there must be, and there certainly isn't. I understand. That's your argument. I'm just asking a different question. I'm just saying, do we have a case? Do you have a case? I mean, you've researched this area. And so I don't mean have you seen it in the courtroom yourself. I'm guessing you're, you know. No, I haven't. As being an appellate attorney, no. Even as many cases I've seen, I've never seen a case like it. But we have Lexis and stuff like that to help us. Do you recall a case where a court has gone this deeply into the deliberative process and the thinking process and bounced the juror based on views expressed not about, you know, I'm biased against the defendant, you know, that kind of bias, but on the assessment of the evidence, on his assessment of the evidence? Again, I don't believe it was really the deliberative process. He's trying to see what was. No, I understand. And I understand. That's a question you want to answer, but that's not the question I'm asking. Do you have a case that has approved or has involved this kind of deep review, where the jurors were actually questioned one by one about what the particular juror said? I cannot come up with one offhand, no. But, again, this is a situation where basically the type of. . . I think this is a special case. I think this is a case where. . . I'm just asking, would you like a couple of days to look into it and see if you can come up with a case? I mean, maybe you think there's something out there that we've missed. I think it's all. . . Well, you can give us your. . . I think it's all complete in my briefing, but I believe that on the briefing and on the law that there cannot be relief granted. And, again, because ultimately why he bounces them is because of bias and that finding of bias, that finding that this person is lying to him. And that's a credibility call. Is lying to the judge the same as bias? That's what the trial judge felt, that he was lying to him. And he says it many times throughout the hearing. No, no, I understand, but there might be many reasons a juror might lie. I mean, you've seen it. Yeah, and it doesn't make them right. Your juror is asked, you know, do you have a criminal record, and they'll say no. And that person would be a juror. So it's getting to those points. . . No, no, no, I understand that. But is that bias? I mean, there could be many reasons other than bias why a juror might lie. Is lying. . . I mean, lying might itself, for whatever reason, under certain circumstances, be disqualifying. But is it the same as bias? Yes. Yes, it is in the sense of bias where here the judge says he's lying to me, and I don't believe he's going to apply the law. And it's actual bias because he's actually biased then, as he said, against the prosecution. It's both the defendant and the prosecution are entitled to an impartial jury. We are all entitled to an impartial jury. Absolutely, but a juror could lie for reasons having nothing to do with impartiality. I mean, he could be asked, for example, a question that might implicate something that is personal to him, and he just wishes not to disclose it. He might say, you know the question. I'm not sure exactly the same question is asked in the state court or the federal court, but there must be a question like has anybody in your family ever been in trouble with the police or been in jail or whatever? And the juror might feel, gee, my husband or my son, you know, but, you know. Exactly. But just is embarrassed to disclose it in court before people and maybe perfectly, and then, you know, may or may not be basically disqualified in the jury, but is that bias? That would be just implied bias in that situation, but that's not the situation here. I mean, the reason why he did find that he was biased is because he felt that he was not partial, that he was bent. You think that would be implied bias? I believe that your situation that you were talking about would be considered, quote, implied bias, that you could have an implied bias in that way. But I think here what you have is actual bias where he's saying that the reason that I'm finding that he's lying and why he's being dishonest and why I find it troubling is because the fact that I can't believe that he's actually going to be applying the law. And that was a credibility determination. And that was about partiality. And because of that, this Court must, must apply special deference. Where did the Court of Appeals say was the reason? Did it say it was because he lied? The Court of Appeals put it in a slightly different language. I believe it had to do with, again, making a credibility determination, having to do with misconduct. But I believe in the California law, if I'm correct, that lying could be a basis of finding good cause for bias. I'm not asking what could be. You know, the California Court of Appeals stated a lot of facts, but then it gave you its reasons, which is what I assume we're reviewing. So where in its reasons did it say it was because he lied to the Court? Well, I believe it said somewhere that it had to talk about the credibility determination that the trial court made. And ultimately, we're also looking at what the trial court decided on the facts of making its factual findings and therefore going down beneath the Court of Appeals. No, no, I'm just talking about reviewing what the Court of Appeals did and what they thought was a good reason for removing the juror. I mean, the trial judge might have had 20 reasons, 10 of which may have been nutty. It doesn't matter. What matters for us, we're reviewing the Court of Appeals' decision, and I'm looking to find what they thought was a good reason to remove a juror. Let me see. I think I lost my page here. I think they were also pointing to what they said. There were three, if I should see here. They found three things that the factual findings made by the Court of Appeals in reviewing the state court record was that juror No. 6 either explicitly said he would not follow the law or had implied as much, according to most jurors. Let me see. Where in the Court of Appeals' opinion are you viewing? I believe that it would be—oh, goodness, let me find it. Do you have the Court of Appeals' opinion? I have it in the E.R. Let's go and get it. It says at the— You need to give us a page number. Yeah, sure. It said at the—either the excerpts of record at page 43 or the opinion itself at page 16, where it said at the bottom, the first paragraph at the bottom, the evidentiary hearing supported the trial court's finding of bias. And according to most jurors, juror No. 6 had either explicitly said he would not follow the law or had implied as much. He apparently rejected the notion that because of vicarious liability principles, Petitioner Williams and Taylor might be guilty of the same crime. He said the trial court was entitled to consider juror No. 6's demeanor while being examined and could properly come to the conclusion that he had been dishonest. So there is the Court of Appeal saying that, yes, the trial court made this credibility determination, found that he was dishonest, and here we have to give that special deference. And we cannot reverse this case, given that deferential standard, given that we're here on habeas, and given that there's no Supreme Court authority, controlling authority that says otherwise. Basically, again, it's the trial judge making a credibility call. Thank you. I have one more question for you. Where in this decision did the Court of Appeals decide the question of whether there was a Sixth Amendment violation? What we're looking at is they were applying what was California law, the 1089, I believe, of the Penal Code, and saying that California State Court properly applied that. I think that specifically they didn't get into a Sixth Amendment question, but if you look at, for our purposes, what we have are really no U.S. Supreme Court authority that would govern this particular type of situation. What we have is California law under Cleveland picking a certain strategy, and then we have what the lower federal courts apply, but, again, that is not based on U.S. Supreme Court authority in the sense of we cannot apply, say, Symington, Thomas, those cases, and say Cleveland and California are therefore wrong because there's no Supreme Court case governing. Thank you. Thank you, Your Honors. That was a very long answer. Thank you, Your Honor. Especially coming from you. It wasn't a good answer. It was just a long answer. I take it the answer is no to Judge Langhut's question, that the Court of Appeal did not discuss or address the Sixth Amendment. Not specifically, but it doesn't need to specifically address any Supreme Court cases. You keep going on with a long answer. Yes. The answer is it didn't. Not specifically, no. I agree. When you say not specifically, what does specifically add? Nothing. Nothing. Just like to our number six, right? Thank you. Thank you. I don't understand what you're saying. Is there anything more than nothing? Is there anything more than no, by way of an answer to the question of Judge Langhut? No would answer it. It is not discussed. The Court of Appeal does not discuss the Sixth Amendment. The Court of Appeal does not discuss the Sixth Amendment. Correct. Okay. Was it raised? In the Court of Appeal briefing, not to my recollection. So I don't know. Okay. All right. Thank you. I know I'm out of time, but I wanted to answer your question. We'll give you a couple minutes. You had asked if I have a Supreme Court case on the issue of delving into jurist deliberations, and I looked at this Court's opinion in United States v. Simington. On page 1086, there's a quote from Justice Cardozo in Clark v. United States, 289 U.S. 1, and then the pinpoint side is page 13. That's the case from 1933. There, Justice Cardozo talked about the specific subject and said, quote, Freedom of debate might be stifled and independence of thought checked if jurors were made to feel that their arguments in ballots were to be freely published to the world. And Simington is not a habeas case, but it is this Court looking at Supreme Court law and talking about this case where a judge is delving into juror deliberations and interfering with them. And I wanted to address the idea that this Court should give any deference to a finding that the juror was lying. In Perez v. Marshall, there was deference in that case because there was special demeanor findings, very specific, numerous demeanor findings about how the person was slouching, was emotionally out of control, refused to continue deliberating, and the judge just talks about how she was an emotional wreck and wished that it would have been videotaped. So there, there's a case where you could find that there's demeanor findings. So here the Court of Appeal erred in saying that juror numbers, that there's any kind of demeanor finding. We can comb the record and find that there are none. Not once did the judge make any mention whatsoever, the trial judge, of any demeanor on the part of juror number six. Was the Sixth Amendment issue raised to them? Yes, Your Honor.  That's not what I asked. It was raised. In the briefs to the Court of Appeal? Yes. Yes, it had to be. It was raised in the Court of Appeal and in the California Supreme Court. Okay. And if there are no further questions, thank you. Okay, thank you. In case you're sorry, you just have some of this. Well, next to you.
judges: Whyte, Kozinski, Reinhardt